## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No.  1:21-CR-10013-JES-JEH |
| | ) |
| RYAN GROSS, | ) |
| | ) |
| Defendant. | ) |

### SENTENCING MEMORANDUM

NOW COMES, the Defendant, RYAN GROSS, through his counsel, Charles Schierer and Schierer & Ritchie, LLC., and in support of this Sentencing Memorandum, states as follows:

### Summary

Ryan Gross, hereinafter "Ryan," the Defendant in the instant case, respectfully requests this Court impose a sentence of 180 months imprisonment due to his voluntary guilty plea to all charges in this case.  Such a sentence is sufficient, but not greater than necessary.  Ryan is remorseful of his actions, and he acknowledges that his actions were wrong and hurtful to the victim.  He took responsibility for his misconduct and spared the victim, and her family, further victimization when he pled guilty to all Counts on April 14, 2022.  Ryan wants nothing more than for the victim to find peace and healing and to re-pay his debt to society.

### Guideline Range

The U.S. Probation Office prepared a presentence investigation report on July 7, 2022, which calculated the guideline range of imprisonment to be natural life.  PSR 21.  Because each count has a maximum of 30 years, the guideline range is reduced to 1,440 months.  Ryan

respectfully requests a sentence below this guideline range. The aforementioned guideline range vastly overstates Defendant's criminal behavior and likelihood to reoffend.

## 18 U.S.C. § 3553(a) Factors

Under *United States* v. *Booker*, sentencing guidelines are advisory and not binding on the court. 543 U.S. 220 (2005). While district courts are required to consider guideline recommendations, a district judge may determine that a within guidelines sentence is "greater than necessary" to serve the objectives of sentencing and is empowered to reject the range due to individual factors in a case or disagreements with how the guideline was promulgated. *Kimbrough* v. *United States*, 552 U.S. 85 (2007). Such circumstances need not be "extraordinary" to justify a sentence outside the guidelines range. *Gall* v. *United States*, 552 U.S. 38 (2007). A district court should begin with the guidelines, but they should not presume the guidelines range is reasonable. *Gall*, 552 U.S. at 50; *Rita* v. *United States*, 551 U.S. 338, 351 (2007). In this case, the guideline range fails to provide any meaningful guidance to the court to assist it in determining a fair sentence.

Section 3553(a) instructs a court to impose a sentence that is sufficient, but not greater than, what is necessary to comply with several statutory purposes, including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, and the need to avoid unwarranted sentencing disparities. Further, as the Supreme Court has emphasized, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *Booker*, 543 U.S at 220.

I.     **The History and Characteristics of the Defendant**

Ryan was born on May 16, 1996, in Johnson City, Tennessee to Ronald and Ronda Gross, who are still married. PSR 18. Ryan has an older sister who resides in Clermont, Florida. *Id.* The Gross family is very close and provides an extraordinary support structure for Ryan, who speaks with his parents daily and has weekly contact with his sister. PSR 18-19. Ryan comes from a steady and reliable family, which is reflected in his personal life and will help him re-establish his life once he is released. He had perfect attendance in school from kindergarten through 12th grade, he attended Middle Tennessee State University where he earned his pilot's license in January 2021. *Id.* at 19-20. His education was interrupted, but he hopes to finish his bachelor's degree in Aerospace.

Described as a quiet child, Ryan was often reserved and enjoyed spending time with his family. Being involved in sports, Ryan learned to lead and form connections with his teammates. Once Ryan set his sights on something, he worked very hard to achieve it. For example, after obtaining a 19 on his ACT, he worked with a tutor to raise his score and qualify for a scholarship. Ryan was routinely involved with the church. The Gross family were regular volunteers during the holiday season, which is where Ryan learned to lend a helping hand. From driving two hours to assist his grandparents, visiting his uncle in the hospital and accompanying him to treatments, to working hard to raise the funds to get his pilot's license, Ryan has shown compassion and perseverance in times of strength and times of weakness.

These past achievements are just a few of the qualities that his pastor attested to in his letter of support. Having watched him grow up, Pastor Simmerman states that Ryan is an honorable individual worthy of the court's consideration. In her letter, Ryan's mother stated she knows her son has so much more to offer in this world. Ryan's grandmother said Ryan has

always been there for her, and Ryan's aunt stated Ryan holds significance in their family.  He holds a special place in his cousins' hearts. His cousin, Lucas, stated that he and Ryan were always able to pick right back up where they left off.  His cousin, Jacob, stated that Ryan was always by his side cheering him on.

It is not only Ryan's family that think he is a special person.  Rochelle and Joseph Hart know he can become the young man that God intended him to be.  Loy and Julia Ball stated that Ryan never hesitated to help them with any project they had going on.

While incarcerated, Ryan has been reading to keep up with his education.  He hopes to finish his bachelor's degree at Middle Tennessee State University.  He continues to speak to his mother, father, and sister, and he has been involved in a bible study.  Ryan has expressed his desire to receive counseling to get help.

He does not have a substance abuse problem, he has no mental health issues, no criminal history, and no history of violent behavior.  His family members describe him as compassionate, attentive, reliable, and loving.  Of course, Ryan was not perfect. A quiet and shy person by nature, and forced inside and at a computer due to the pandemic, Ryan followed a dark path.

Beginning on November 16, 2020, and ending December 3, 2020, while living at home attending online college classes, due to the pandemic, Ryan sought validation and attention online.  A problem that plagues countless young Americans.  In the course of under three weeks, Ryan met an underage female and crossed a line he knew existed, but what seemed blurred due to a few simple clicks and swipes on a phone.  These acts do not reflect Ryan's heart or value to society.

With a criminal history score of zero, Ryan is more likely to be impacted by imprisonment, and he presents a low risk of recidivism.  He has worked toward his goal of

becoming a pilot, and, if he were imprisoned for most of his life, his education would become obsolete.

## II.     Nature of the Offense

Ryan never met the victim in this case in person. He, like so many young Americans, used social media to communicate. The application used in this case was Snap Chat. From November 16, 2020, to December 3, 2020, Ryan communicated with the victim. On multiple occasions, Ryan asked for sexually explicit pictures and videos. Ryan acknowledges that his actions were wrong.

When considering a sentence that is sufficient, but not greater than necessary, there are numerous factors the court considers. A sentence should reflect the seriousness of the offense and afford adequate deterrence, but it should promote the goal of reduced risk of recidivism, and it should be tailored to the defendant. The Federal Sentencing Commission has found that proximity, participation, and propensity appear to be key facts that impact sentencing outcomes. The proximity includes the closeness of the relationship and the distance involved[1]. Shorter sentences were imposed, on average, when the offender was an "internet stranger." *Id.*

Here, Ryan lived in a different state, and he did not have a personal relationship with the minor before "adding" her as a "friend" on the Snapchat application. Participation includes sexual contact or the use of coercive tactics. *Id.* at 47. While Ryan did not make physical contact with the minor, he did solicit images and videos. Finally, propensity includes a pattern of behavior or a history of sexual misconduct. *Id.* at 49. Courts imposed longer sentences on production offenders who engaged in CP conduct outside of the instant offense and longer

---

[1] United States Sentencing Commission, *Federal Sentencing of Child Pornography: Production Offenses*, 45 (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf.

5

sentences on offenders with a history of sexual misconduct. There is one documented instance where a police report was filed against Ryan, alleging he intimidated and threatened a 19-year-old female July 19, 2017. PSR 12. Ryan has not sought out individuals, and his main method of communication is online. A court may vary downward where it determines that a within-Guidelines sentence would impair rehabilitation. *Gall*, 522 U.S. at 43. Ryan lives with his parents, who have stated they would monitor their son and restrict internet access in the future.

### III. Policy

Child pornography began with the advent of the camera, but, historically, was not easily accessible[2]. Once industrialization created the printing press and reliable mail services, these pornographic images could be distributed more readily. What was previously a local production turned into the circulation of over 260 child pornography magazines. *Id.*

Thus, 18 U.S.C. § 2251 was first proposed in 1977 to combat the sudden expansion and circulation of child pornography. *Id.* The original statute proposed a maximum sentence of 10 years for first time offenders. Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. 95-225, 92 Stat. 7 (1977) (current version at 18 U.S.C. § 2251 (West 2018)). Seventeen years later, the same statutory maximum of 10 years for first time offenders remained in effect. Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. 103-322, 108 Stat. 1796 (1994) (current version at 18 U.S.C. § 2251 (West 2018)).

The United States Sentencing Commission (USSC) recommended Congress increase the statutory *maximum* for production of child pornography to 15 years in a 1996 report.[3] The rise of

---

[2] Caitlin Lindenhovious, *Sexual Exploitation of Children: Protection From More Than the Public*, 16 Liberty L. Rev. 307, 313 (2022), https://digitalcommons.liberty.edu/cgi/viewcontent.cgi?article=1318&context=lu_law_review.

[3] United States Sentencing Commission, *Report to the Congress: Sex Offenses Against Children*, ii (1996), https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/199606-rtc-sex-crimes-against-children/199606_RtC_SCAC.pdf.

computer use was of significant concern to Congress and the USSC, and the increase in punishment was meant to deter the rapid integration of technology at the time. *Id.* at 30. The Sentencing Commission considered how child pornography could be shared: through online services, e-mail, web browsers, newsgroups, and bulletin boards, when it suggested that maximum sentence. *Id.* at 25-27. Congress then amended the bill to change the mandatory minimum to 10 years and the maximum to 20 years. Protection of Children Against Sexual Exploitation Act of 1977, Pub.L. 104-208, 110 Stat. 3009-30 (1996) (current version at 18 U.S.C. § 2251 (West 2018)).

The current mandatory **minimum** of 15 years was added to the statute in 2003. Protection of Children Against Sexual Exploitation Act of 1977, Pub.L. 108-21, 117 Stat. 652, 653, 683 (2003) (current version at 18 U.S.C. § 2251 (West 2018)). Congress considered the widespread exchange of child pornography through multiple avenues in 1996, yet no one could have predicted the proliferation of technology. In other words, this move to 15 years as a mandatory minimum predated the widespread use of social media and smartphones. Any momentary whim could result in a serious felony, whereas before, such technology existed, the perpetrators had several days to reconsider pursuing their intentions. Now, a swipe of a screen in less than a second can expose a person to decades behind bars.

For example, Facebook began in 2003 as a social media website for college students, but it expanded to the general public by 2006.[4] The iPhone debuted in 2007, but it did not have the "app store" until 2008.[5]

---

[4] Wikipedia, *History of Facebook*, https://en.wikipedia.org/wiki/History_of_Facebook (last visited Aug. 10, 2022).
[5] Ben Gilbert, *It's Been Over 12 Years Since the iPhone Debuted*, Business Insider (July 22, 2019, 9:55 AM), https://www.businessinsider.com/first-phone-anniversary-2016-12#the-first-iphone-required-a-computer-to-set-it-up-it-was-another-five-years-before-apple-cut-the-cord-8; Wikipedia, *App Store (iOS/iPadOS)*, https://en.wikipedia.org/wiki/App_Store_(iOS/iPadOS) (last visited Aug. 10, 2022).

The application "Snapchat" came onto the scene in 2011.[6] In November 2012, 20 million photos were being shared per day on Snapchat. *Id.* Less than eight years later, more than four billion Snaps were sent each day in 2020. *Id.*

In 2003, when the 15-year statutory minimum took effect, total mobile phone sales exceeded 560 million units.[7] As of 2021, there are over 6.64 billion smartphone users, which is 89% of the world population.[8] The former number reflects all mobile phone sales, while the latter number reflects smartphones, a sub-category of mobile phones.

Digital content sharing is nothing new, however, the speed in which information can be shared is faster, and the barrier to entry is much lower. This immediate feedback provides positive reinforcement for individuals that normalizes and encourages their behavior, and this positive reinforcement can overshadow the seriousness of the offense. *Id.* When Congress amended the statute to add the 15-year mandatory minimum, they were seeking to deter the proliferation of internet offenders as technology advanced. Congress was also responding alleged leniency in sentencing.

As quoted from the Congressional Record, "the increased mandatory minimum sentences are responsive to real problems of excessive leniency in sentencing under existing law." 149 Cong. Rec. H2950-01. In skepticism of downward departures, they are also quoted saying, "these statistics demonstrate that the Sentencing Guidelines in this area are not being adhered to and that these crimes are not being taken seriously." 2003 WL 1079511. However, the data

---

[6] Wikipedia, *Snapchat*, https://en.wikipedia.org/wiki/Snapchat (last visited Aug. 10, 2022).
[7] Reuters, *Cell-Phone Sales Boom Worldwide in 2003*, NBC Universal (Feb. 3, 2004, 12:01 PM), https://www.nbcnews.com/id/wbna4147046.
[8] Caitlin Lindenhovious, *Sexual Exploitation of Children: Protection From More Than the Public*, 16 Liberty L. Rev. 307, 315 (2022), https://digitalcommons.liberty.edu/cgi/viewcontent.cgi?article=1318&context=lu_law_review.

provided by the USSC does not support this belief. As shown in the graph below, a majority of sentences imposed were within the range, and there were very few downward variances.[9]



Figure 9. Sentence Imposed Relative to the Guideline Range for §2G2.1 Offenders
Fiscal Years 2005 – 2019

Further, the implication that guideline departures are indicative of a lack of seriousness could not be further from the truth. Under *Booker*, the objectives of sentencing are not to sentence defendants for as long as possible, but to foster respect for the law, deter criminal conduct, and to promote rehabilitation, to name a few. Downward variances have been used as a tool as sentences have drastically increased over time. For example, the average sentence for

---

[9] United States Sentencing Commission, *Federal Sentencing of Child Pornography: Production Offenses*, 23 (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf.

production offenses went from 63.5 months in 1992 to 153.4 months in 2004.[10] By 2009, averages sentences for productions offenses were 282.9 months. *Id.* This upward trend is reflected in Figure 9-3 below.



Now that technology is widespread and a part of everyday life, it is not the means that need to be deterred, but the conduct itself. Online communication has been Ryan's main means of communication. Further, while threats of sharing were communicated, Ryan did not share these pictures and videos with third parties. In this case, deterrence would be possible through a reduced sentence and court-imposed restrictions, and a court may vary downward where it determines that a within-Guidelines sentence would impair rehabilitation. *Gall*, 522 U.S. at 43.

---

[10] United States Sentencing Commission, *Federal Child Pornography Offenses*, 253 (2012), https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf.

10

Extending Ryan's sentence past 15 years would create significant barriers for Ryan to re-enter society.

At sentencing, we anticipate the United States to recommends a sentence beyond the 15-year mandatory minimum. Not only would this be a sentence that is more than necessary, but it would be inconsistent with prevailing attitudes and sentences. For example, Supreme Court Justice Ketanji Brown Jackson made comments during her confirmation regarding a below guideline range sentence she imposed while serving as a District Court Judge. She is quoted as saying, "the statute doesn't say look only at the guidelines and stop," and "the statute doesn't say impose the highest possible penalty."[11] In Justice Brown's view, one issue she takes with the sentencing statute is that it was written before the internet age, which leads to extreme sentencing disparities. *Id.* Individuals can now access information with the push of a button, and sentencing guidelines have failed to adapt to that changing technology. Justice Brown issued multiple below guideline range sentences for child pornography offenses.

The Seventh Circuit has affirmed a district court's belief that a defendant's younger age and immaturity were a basis upon which a court could impose a sentence 21 months below the low end of the advisory guidelines range. *United States* v. *Baker*, 445 F.3d 987, 990-91 (7th Cir. 2006). The district court stated the case was "different in the sense that the defendant is not and does not have the appearance of a dirty old man who hangs out at playgrounds, preying on small children." *Id.* at 990. A term of imprisonment would probably mean more to him and have a greater impact because of his youthful age and his lack of a criminal background. *Id.* Thus, 15

---

[11] Debra Cassens Weiss, *'Nothing Could Be Further From the Truth,' Jackson Says in Response to Sen. Hawley's Sentencing Accusations*, ABA Journal (March 22, 2022, 12:15 PM), https://www.abajournal.com/web/article/nothing-could-be-further-from-the-truth-than-hawleys-sentencing-accusations-jackson-tells-senators. See Exhibit A.

11

years to lifetime imprisonment is a range that is greater than necessary to serve the objectives of sentencing.

### **Placement**

Ryan respectfully requests a placement at a federal department of corrections as close to his family in Jackson City, Tennessee as possible.

### **Conclusion**

Ryan respectfully requests the Court impose a below guideline range sentence of 180 months.  Such a sentence would be sufficient, but not greater than necessary, to fulfill the purpose and considerations set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,
RYAN GROSS, Defendant.

/s/ Charles Schierer
Charles G. Schierer
Schierer & Ritchie, LLC.
1009 Illini Drive
East Peoria, Illinois
(T) 309-839-2024
(F) 309-517-5856
(E) chuck@srtriallawyers.com